IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARSHALL RAY PARTAIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3405 |
| | § | |
| JIMMY ROSALES, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Marshall Ray Partain, brings this action pursuant to 42 U.S.C. § 1983 against defendants, Mr. Jimmy Rosales and Dr. Eugene Fontenot, for denial of medical treatment in violation of his constitutional rights (Docket Entry No. 1). Plaintiff seeks compensatory and punitive damages, court costs, and injunctive relief. Pending before the court are Plaintiff's Unopposed Motion for Appointment of Counsel (Docket Entry No. 9), Plaintiff's Motion for Temporary Restraining Order (Docket Entry No. 13), and Defendants' Motion for Summary Judgment (Docket Entry No. 20). For the reasons set forth below, defendants' motion for summary judgment will be granted, and plaintiff's pending motions will be denied as moot.

### I. Plaintiff's Allegations

Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs by repeatedly refusing

his request for a lower-bunk restriction, which resulted in an injury to his left foot.  Specifically, plaintiff claims to suffer from chronic lower back pain as a result of six herniated disks in his spine.[1]  Plaintiff alleges that starting on May 30, 2007, he continuously requested a lower-bunk-only restriction from Mr. Rosales, a physicians' assistant (PA) at the University of Texas Medical Branch (UTMB), and that his requests were denied.  Additionally, the plaintiff alleges that he was not examined by a specialist for his lower back pain.

Plaintiff alleges that on August 5, 2007, after experiencing pain in his lower back and right leg, he slipped off the ladder leading to his upper bunk.  Plaintiff alleges he sustained an injury to a toe on his left foot, for which he received stitches and now bears a scar.  In addition, plaintiff alleges he is experiencing immobility and numbness in two of his toes on the same injured foot.  Plaintiff contends that Mr. Rosales was aware that plaintiff faced a substantial risk of harm if he remained on a top bunk but chose to disregard this risk.  Plaintiff contends that by refusing to order a lower-bunk restriction for him, Mr. Rosales chose not to act to prevent plaintiff's ladder accident.

Furthermore, plaintiff contends that Dr. Fontenot, Medical Director at UTMB, maliciously ordered an inadequate five-day lower-bunk-only restriction following his accident.

---

[1] Exhibit B, relevant portions of plaintiff's medical records, attached to Docket Entry No. 20, p. 361.

Plaintiff is suing defendants in both their official and personal capacities.

## II.   Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because plaintiff's claims against them in their official capacities are either moot or barred by the Eleventh Amendment, and plaintiff's claims against them in their personal capacities are barred by qualified immunity.  In support of their motion for summary judgment defendants submit relevant portions of plaintiff's medical records and an affidavit executed by Dr. Bobby M. Vincent, M.D.

Plaintiff has not filed a formal response to defendants' motion for summary judgment but has filed Plaintiff's Response to Defendants' Original Answer and Jury Demand (Dock Entry No. 21), in which he asserts that defendants are not entitled to Eleventh Amendment immunity because they are being sued in their official capacities for a prospective injunction and that defendants are not entitled to qualified immunity because their alleged misconduct constitutes neither good faith nor reasonable efforts to treat him adequately.[2]

### A.   Summary Judgment Standard

Summary judgment is warranted if the moving party establishes that there is no genuine dispute as to any material fact and that

---

[2]Docket Entry No. 21, p. 3.

-3-

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). An examination of substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under the governing law." Id. A material fact creates a genuine issue if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor. Id. at 2511. Rule 56(c) authorizes summary judgment against a party who fails to make a showing adequate to establish essential elements of a party's case. Celotex Corp., 106 S.Ct. at 2552.

The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Id. at 2553. See also Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). In response to such a showing, the burden shifts to the nonmoving party to show that summary judgment is not warranted by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence because specific facts exist over which there is a genuine issue for trial. Celotex Corp., 106 S.Ct. at 2552. See also Wallace, 80 F.3d 1046-47. The nonmovant's burden may not be satisfied by conclusory claims,

unsubstantiated assertions, or insufficient evidence.  <u>Wallace</u>, 80 F.3d at 1047.  If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate.  <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1132 (5th Cir. 1992).

**B.   Undisputed Facts**

Dr. Vincent's affidavit and plaintiff's medical records establish the following facts.  Plaintiff is a thirty-four year old male with a history of lower back and neck pain.

On September 21, 2006, plaintiff went to the clinic complaining of an injured ankle from playing volleyball.[3]  Plaintiff's ability to play volleyball despite a history of back and neck pain was noted on plaintiff's evaluation.  PA Lumpkin removed plaintiff's permanent lower-bunk restriction for two weeks and noted that the x-ray of plaintiff's ankle was normal.

On January 23, 2007, Dr. Lavelle noted that plaintiff suffered from minor back pain and was fully mobile.[4]

On April 19, 2007, plaintiff was again noted to be playing volleyball when he suffered a minor injury to his left ankle.[5]  An ice pack and elevation were recommended.

---

[3] Exhibit B attached to Docket Entry No. 20, p. 302.

[4] <u>Id.</u> at 287.

[5] <u>Id.</u> at 273.

On May 7, 2007, plaintiff injured his left ring finger on the rim of a basketball goal while going up for a ball during a game.[6]

On May 30, 2006, plaintiff informed Mr. Rosales that he broke his right ankle in September of 2006 and suffered from six herniated disks in his spine, which made getting up on his top bunk aggravating.  Mr. Rosales responded that these problems did not qualify plaintiff for a lower-bunk restriction.[7]

On June 5, 2007, plaintiff again requested a lower-bunk restriction from Mr. Rosales.  He was told that because his mobility was not impaired, he did not qualify.  Plaintiff grew angry and argumentative, threatening to fall from his bunk to make his point.[8]  Mr. Rosales told plaintiff that because he was freely mobile, appeared in no distress, and was muscular in appearance, he did not qualify for a lower-bunk restriction.  Mr. Rosales also noted that since plaintiff was able to jump to the rim in basketball, his problem was not serious.  However, Mr. Rosales submitted a referral to "brace and limb" on the plaintiff's behalf for his complaints of foot problems and ankle pain.  On June 11, 2006, brace and limb denied the referral.[9]

---

[6]Id. at 433, 481.

[7]Id. at 576.

[8]Id. at 433.

[9]Id. at 448.

On June 29, 2007, ankle x-rays showed that plaintiff had no bone abnormalities.[10]

On July 16, 2007, plaintiff based a request for a lower bunk on an MRI taken in 2006.[11]  Mr. Rosales told plaintiff that because he was not mobility impaired he did not qualify.  Plaintiff also reported some leg numbness, but Mr. Rosales did not note any weakness.

On August 5, 2007, plaintiff injured his toe after falling off the ladder of his bunk.[12]  The laceration to his toe required suturing, and plaintiff was transferred to a local hospital for evaluation and repair.  Upon returning from the local hospital, plaintiff was given a cell pass and a restriction to a lower bunk for five days.[13]

On August 7, 2007, plaintiff submitted a sick call request complaining of redness and pain where he received stitches for his lacerated toe and reported he may have an infection.[14]  A provider appointment was scheduled.  During plaintiff's follow-up appointment for his lacerated toe, no erythema edema or discharge was found; plans were made to remove the sutures in a second follow

---

[10] Id. at 530.

[11] Id. at 431.

[12] Id. at 293, 330.

[13] Id. at 272.

[14] Id. at 566.

up.[15]  Additionally, Dr. Fontenot ordered ten days of 500 mg of Keflex for plaintiff.

On August 11, 2007, plaintiff requested a stronger pain medication and complained of pain in both his back and his sutured toe.[16]  He was told his prescription for medication had been refilled.

Plaintiff was seen by UTMB Neurosurgery on September 12, 2007.[17]  The MRI of plaintiff's lower back showed no significant findings and mild bulging in the cervical spine.  Plaintiff did not want surgery but asked to be referred to the pain service for pain management.  UTMB noted that plaintiff may have soft collar and that if symptoms did not improve plaintiff would be referred for a new MRI.

On November 11, 2007, plaintiff complained of lower back pain and requested a lower bunk.[18]  Mr. Rosales once again denied plaintiff's request because he was not mobility impaired.

**C.  Analysis**

Plaintiff has asserted claims against defendants in both their official and personal capacities (Docket Entry No. 21).

---

[15] Id. at 306.

[16] Id. at 564.

[17] Id. at 415-16.

[18] Id. at 552.

1.  <u>Official Capacity Claims</u>

The Eleventh Amendment bars suits for damages by citizens of a state against their own state or a state agency. <u>Pennhurst State Sch. and Hosp. v. Halderman</u>, 104 S.Ct. 900, 908 (1984); <u>Champagne v. Jefferson Parish Sheriff's Office</u>, 188 F.3d 312, 313 (5th Cir. 1999). A suit brought against a state official in his official capacity is considered a suit against an official's office and, therefore, no different from a suit against the state itself. <u>Will v. Michigan Dept. of State Police</u>, 109 S.Ct. 2304, 2306 (1989). The Eleventh Amendment interposes a jurisdictional bar to suits against the state by private parties seeking damages in the form of monetary relief from the state. <u>Clay v. Tex. Women's Univ.</u>, 728 F.2d 714, 715 (5th Cir. 1984). However, the Eleventh Amendment does not bar suits for prospective injunctive relief against individuals in their official capacities as agents of the state. <u>Aguilar v. Tex. Dept. of Criminal Justice</u>, 160 F.3d 1052, 1054 (5th Cir. 1998).

Plaintiff's complaint alleges claims for compensatory and punitive damages and injunctive relief against defendants. Although plaintiff has not filed a formal response to Defendants' Motion for Summary Judgment, he has filed his Response to Defendants' Original Answer and Jury Demand (Docket Entry No. 21) in which he clarifies that he is suing defendants in their individual capacity for damages and in their official capacity for

an injunction, specifically asking that defendants provide plaintiff with a lower-bunk restriction. Although the Eleventh Amendment does allow plaintiff to sue defendants in their official capacity for injunctive relief, plaintiff is no longer confined within the Texas Department of Criminal Justice (TDCJ) (Docket Entry No. 17). Because defendants cannot effectuate the injunction plaintiff seeks, plaintiff's claims are moot. Plaintiff's claims against Mr. Rosales and Dr. Fontenot for injunctive relief will therefore be denied as moot.

   2.   <u>Personal Capacity Claims</u>
      (a)   Qualified Immunity

Qualified immunity shields government officials sued in their individual or personal capacity from claims for damages if their conduct meets the "objective legal reasonableness" test. <u>Harlow v. Fitzgerald</u>, 102 S.Ct. 2727, 2739 (1982). An official is entitled to qualified immunity if his conduct was objectively reasonable in light of laws "clearly established" at the time of the official's actions. <u>Wilson v. Layne</u>, 119 S.Ct. 1692, 1696 (1999) (<u>quoting</u> <u>Harlow</u> at 2738). Once the defense of qualified immunity is asserted, the plaintiff bears the burden of overcoming the defense. <u>Estep v. Dallas County, Tex.</u>, 310 F.3d 353, 366 (5th Cir. 2002). To overcome a defendant's presumed immunity, a plaintiff must (1) claim a violation of a constitutional right, (2) show that the constitutional right was established at the time of the defendant's

actions, and (3) demonstrate that the defendant's actions were objectively unreasonable in light of the clearly established law. Id. (citing Thomas v. City of Dallas, 175 F.3d (5th Cir. 1999)). That is, courts must decide whether reasonably competent officers would have known that their actions violated law that was clearly established at the time of the disputed action. Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004).

In 2007, at the time of the defendants' actions, it was well established that a prison official's deliberate indifference to serious medical needs of prisoners amounts to cruel and unusual punishment proscribed by the Eighth Amendment. See Estelle v. Gamble, 97 S.Ct. at 287, 291. Because plaintiff has sufficiently alleged the violation of a clearly established constitutional right, the court next considers the objective reasonableness of the defendants' disputed actions. Defendants argue that the undisputed evidence establishes that they were not deliberately indifferent to plaintiff's medical needs because their actions were not objectively unreasonable.

(b)   Applicable Law

Plaintiff contends that he received inadequate medical care from the defendants, which amounted to no treatment at all.[19] He asserts that defendants were deliberately indifferent to his lower

---

[19]Docket Entry No. 21, p. 2.

-11-

back pain and did not accommodate his medical condition.[20] He argues that Mr. Rosales knew that he faced a substantial risk of harm if he remained on a top bunk and disregarded this risk by refusing to order a lower-bunk restriction for plaintiff.[21] Furthermore, plaintiff contends that Dr. Fontenot maliciously ordered an inadequate five-day lower-bunk restriction following plaintiff's accident.[22] Plaintiff also claims that defendants' behavior constituted unnecessary and wanton infliction of pain.[23] Finally, he claims that his Eighth Amendment right has been violated.[24]

Claims for denial of medical care to incarcerated individuals are analyzed under the Eighth Amendment. The Eighth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, proscribes cruel and unusual punishment. Victoria W. v. Larpenter, 369 F.3d 475, 483 (5th Cir. 2004). The original aim of the Eighth Amendment was to prohibit inhuman punishment. The Supreme Court has interpreted the Eighth Amendment to preclude punishments incompatible with the "evolving standards of decency that mark the progress of a maturing society." Estelle

---

[20] Id. at 3.

[21] Docket Entry No. 1, p. 4A.

[22] Id. at 5.

[23] Docket Entry No. 21, p. 2.

[24] Id. at 3.
...

v. Gamble, 97 S.Ct. 285, 290 (1976) (quoting Trop v. Dulles, 78 S.Ct. 590, 598 (1958)). In Estelle v. Gamble the Court held that "deliberate indifference" to an inmate's "serious medical needs" constitutes cruel and unusual punishment, giving rise to a cause of action under § 1983. Id. at 291. Section 1983 allows individuals to sue state actors in state or federal court for civil rights violations. 42 U.S.C. § 1983.

In an Eighth Amendment claim based on medical care, an official acts with deliberate indifference if he acts or fails to act while consciously disregarding knowledge that an inmate faces a "substantial risk of serious harm" to his health or safety. Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994). An official must have actual knowledge of the substantial risk; it is not enough that the official should have but did not. Id. However, if a risk was obvious, a prison official's knowledge of that risk may be inferred. Id. at 1981.

A claim of deliberate indifference requires an inmate to provide evidence that he was refused treatment, his complaints were ignored, he was intentionally treated incorrectly, or that prison officials engaged in some similar conduct that clearly demonstrated their wanton disregard for the inmate's serious medical needs. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006). An inmate's allegations of deliberate indifference may be rebutted by medical records, examinations, medications, and diagnoses. Banuelos v.

McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  Additionally, an inmate's mere disagreement with his medical treatment is normally not actionable under § 1983.  Id.  Decisions concerning forms of treatment or diagnostic techniques are matters of medical judgment and do not represent cruel and unusual punishment.  Estelle, 97 S.Ct. at 293.

      (c)  Mr. Rosales, PA

Starting on May 30, 2007, plaintiff requested a lower-bunk restriction from Mr. Rosales on numerous occasions.  Plaintiff's requests were not ignored but were evaluated and denied.  Mr. Rosales explained to plaintiff that there was no evidence that he was mobility impaired; and, therefore, he did not require a lower-bunk restriction.  Plaintiff does not argue that his mobility is impaired or that the practice of restricting lower bunks to inmates suffering mobility impairment is unreasonable.  Nor does he argue that Mr. Rosales' denial of plaintiff's requests for a lower-bunk restriction placed him at substantial risk of serious harm.

Plaintiff's medical records show that Mr. Rosales was not indifferent to plaintiff's medical needs, but upon request always saw plaintiff, evaluated him, and treated him.  The undisputed evidence shows that Mr. Rosales' determination that plaintiff did not suffer mobility impairment was not unreasonable.  Plaintiff's medical records note more than once that, despite his history of back pain and neck problems, plaintiff was capable of participating

in both basketball and volleyball. His lower back pain did not prevent him from injuring a finger while jumping high enough to touch the rim of a basketball goal on May 7, 2007. Additionally, on a number of occasions plaintiff was examined and found to be mobile. Mr. Rosales' own evaluation of plaintiff on June 5, 2007, showed plaintiff under no distress, muscular in appearance, and freely mobile. Plaintiff fails to present any evidence from which a reasonable fact-finder could conclude either that, absent a lower-bunk restriction, plaintiff faced a substantial risk of serious harm, or that Mr. Rosales actually perceived such a risk and consciously disregarded it.

Viewing the evidence in the light most favorable to the plaintiff, the court concludes that he has failed to present evidence establishing that Mr. Rosales responded to a substantial risk of serious harm with deliberate indifference by failing to take reasonable measures to reduce that risk. See Farmer, 114 S.Ct. at 1978. The summary judgment evidence establishes that Mr. Rosales addressed plaintiff's complaints on several occasions with medication, referrals, and evaluations. Mr. Rosales' determination that plaintiff's mobility was not impaired is supported by the record and is not unreasonable. Although plaintiff disagrees with Mr. Rosales' assessment that he did not qualify for a lower bunk, disagreement over medical judgment does not give rise to a § 1983 claim. See Banuelos, 41 F.3d at 235. Mr. Rosales is entitled to judgment as a matter of law on plaintiff's claim that

he was deliberately indifferent to a serious risk of plaintiff's falling from his bunk.

        (d)   Dr. Fontenot

Plaintiff argues that Dr. Fontenot maliciously ordered an inadequate five-day lower-bunk restriction after his fall. Plaintiff does not claim that his mobility was in fact impaired. Nor does he argue that the five-day limited restriction posed a substantial risk of serious harm or resulted in any harm to him. Plaintiff alleges that he disagrees with Dr. Fontenot's assessment that the five-day restriction was adequate. The undisputed evidence establishes that Dr. Fontenot did not ignore or deny treatment to plaintiff, but merely denied plaintiff the longer lower-bunk restriction he desired. Plaintiff fails to present any evidence from which a reasonable fact-finder could conclude that the limited lower-bunk restriction injured plaintiff, posed a substantial risk of serious harm, or aggravated a pre-existing injury. Additionally, plaintiff failed to present evidence that a laceration injury of this nature customarily is given, or requires, a longer lower-bunk restriction.

Plaintiff has failed to submit evidence demonstrating that Dr. Fontenot's actions were objectively unreasonable, and plaintiff's disagreement with his treatment is a disagreement over medical judgment that does not give rise to a § 1983 cause of action. <u>See Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991).

Consequently, the court concludes that Dr. Fontenot is entitled to summary judgment on the claim that plaintiff has asserted against him in his personal capacity.

**D.    Conclusions**

Mr. Rosales and Dr. Fontenot are entitled to qualified immunity because their conduct has not been shown to be objectively unreasonable in light of clearly established law. Because plaintiff has not shown that defendants were deliberately indifferent to his serious medical needs, his allegations amount to no more than a disagreement over treatment, which does not give rise to a constitutional claim.  See Varnado, 920 F.2d at 321. Plaintiff did not submit evidence that his complaints were ignored, that he was refused treatment, that he was intentionally treated incorrectly, or that defendants exhibited conduct that demonstrates a clearly deliberate indifference to his serious medical needs. Because plaintiff has failed to show defendants were deliberately indifferent to his serious medical needs, his claims fail as a matter of law.

**IV.    Conclusions and Order**

Because the undisputed summary judgment evidence establishes that Mr. Rosales and Dr. Fontenot evaluated and treated plaintiff's back pain and other medical issues on numerous occasions; that plaintiff was denied a lower-bunk restriction because he did not

have impaired mobility; and that defendants can no longer provide plaintiff with the lower bunk he seeks since he has been released from custody, the court concludes that defendants are entitled to summary judgment on plaintiff's claims for monetary relief asserted against them in their personal capacities and for injunctive relief asserted against them in their official capacities. Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 20) is **GRANTED**. Plaintiff's Motion for Appointment of Counsel (Docket Entry No. 9) and Plaintiff's Motion for Temporary Restraining Order (Docket Entry No. 13) are **DENIED AS MOOT**.

The Clerk shall provide copies to the parties.

**SIGNED** at Houston, Texas, on this the 14th day of July, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE